IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TEAL BAY ALLIANCES, INC.,

    Plaintiff,

v.

SOUTHBOUND ONE, INC.,

    Defendant.

\* \* \* \* \* \*

Case No. MJG-13-2180

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Defendant Southbound One, Inc.'s ("Southbound") Motion for Protective Order (ECF No. 57) and Plaintiff Teal Bay Alliances, Inc.'s ("Teal Bay") Cross-Motion to Compel Production (ECF No. 72).[1] On April 15, 2014, I conducted a telephone conference with the parties. For the reasons stated herein, I recommend that Defendant's Motion for Protective Order be granted in part and denied in part, and Plaintiff's Cross-Motion to Compel Production be granted in part and denied in part.

**I.    SCOPE OF REFERRAL FOR *IN CAMERA* REVIEW**

Judge Garbis's letter to counsel dated March 7, 2014 (ECF No. 58) outlines the scope of this discovery-related referral. Teal Bay was directed to select 10 documents "that the Plaintiff believes are most likely to support its position that withholding of production and/or redaction was not appropriate" and "advise Defendant of that selection." (ECF No. 58 at 1). As directed, Southbound transmitted the 10 documents selected by Teal Bay to my chambers for an *in camera* review. Judge Garbis directs that this report and recommendation state (1) whether

---

[1] On March 18, 2014, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Garbis referred this case to me to conduct an *in camera* review of certain documents withheld from production on the basis of the attorney-client privilege and the work-product doctrine.

1

Plaintiff's contentions are valid and (2) whether there appears to be a need for a further *in camera* review.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Evidence 501 provides that in general, the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. Under the attorney-client privilege, confidential communications made between a client and an attorney in an effort to obtain legal services are protected from disclosure. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999). The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). The Fourth Circuit has stated that

> [t]he classic test for application of the attorney-client privilege is set forth in *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (Mass. 1950):
>
> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). The Fourth Circuit has also endorsed the Wigmore eight-factor test for determining whether the privilege exists. *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986). Wigmore holds the privilege to exist:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7)

2

>   from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* (citing 8 Wigmore, Evidence § 2292 (McNaughton rev. 1981)).

With respect to the work-product doctrine, which is not a privilege, but a qualified immunity from discovery, federal law also applies. *See Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769 (D. Md. 2008) (collecting cases). The work-product doctrine is partially codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

>   Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>   >   (i) they are otherwise discoverable under Rule 26(b)(1); and
>   >   (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

The protections of the attorney-client privilege can be voluntarily waived. "When a party asserts an advice of counsel defense, it waives the attorney-client privilege with respect to all communications to and from counsel concerning the transaction for which counsel's advice was sought." *Green, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 418, 420 (E.D. Pa. 2001) (internal quotations omitted). Similarly, the assertion of an advice-of-counsel defense can also waive work-product immunity. *See JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 336 (N.D.W.Va. 2013).

As to the attorney-client privilege, an assertion of the advice-of-counsel defense waives that privilege as to communications and documents relating to the subject matter of the advice. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1163 (9th Cir. 1992). A party asserting the

advice-of-counsel defense may not use the attorney-client privilege "as both a sword and a shield" by selectively disclosing helpful privileged communications while asserting the privilege for damaging communications. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006). Given the nature of the advice-of-counsel defense, "the scope [of the waiver] must of necessity be somewhat broad and is, in fact . . . a waiver of all communications on the same subject matter." *Micro Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass 1995); *see also* Edna S. Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 508 (5th Ed. 2007) ("The principle which courts follow is that once any portion of privileged communications are used in support of some litigated claim, full exploration of that subject matter must be allowed.")

The work-product doctrine is meant to "protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976). An inquiry into an advice-of-counsel waiver of work-product protection requires a court to balance "the need for discovery with the right of an attorney to retain the benefits of his own research." *Id*. at 932. The waiver inquiry with respect to the work-product doctrine centers around fairness to the parties in the context of the advice-of-counsel defense in a trademark infringement case under the Lanham Act, 15 U.S.C. § 1051, *et seq*. Such an inquiry seeks to ensure that the preparations of the attorney asserting the advice-of-counsel defense are not unnecessarily invaded, and that the party against whom the defense is asserted is not prevented from discovering relevant information.

To establish trademark infringement under the Lanham Act, a plaintiff must prove:

(1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or

advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citing 15 U.S.C. § 1114(a)). In determining whether there is a likelihood of confusion, the Fourth Circuit has directed courts to consider a number of factors "that generally are relevant to the . . . inquiry":

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone Ltd.*, 676 F.3d at 153 (citing *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009)).

Advice-of-counsel evidence is most relevant to the factor concerning the defendant's intent. Some courts have referred to this as the "good faith" factor. *See Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991). Good faith can be found where a defendant has relied on the advice of counsel and cannot be said to have adopted its mark with the intention of capitalizing on another markholder's reputation and goodwill by confusing consumers. *See The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996). Advice-of-counsel evidence can also impact the ability of a prevailing party to recover attorney's fees, which are reserved for "exceptional cases." 15 U.S.C. § 1117(a). A party's reasonable reliance on the advice of counsel may serve as evidence that the party did not engage in the willful conduct that has served as a basis for other courts to award attorney's fees in "exceptional cases." *See TakeCare Corp v. Takecare of Oklahoma, Inc.*, 889 F.2d 955, 957 (10th Cir. 1989).

B.   Analysis

Here, Southbound intends to rely on the advice-of-counsel defense "in connection with its good faith adoption, registration, and use of the term 'Shorebilly' as, or as part of, a trademark or service mark." (ECF No. 57-2 at 4). With respect to producing documents, Southbound has indicated that it "will produce communications between Daniel Robinson and Erik Pelton related to Mr. Pelton's advice regarding Defendant's adoption, registration, and use of the term 'Shorebilly' as, or as part of, a trademark or service mark," but will not produce documents "outside the scope of this subject matter" that are protected by the attorney-client privilege or the work product doctrine.[2] (ECF No. 57-2 at 4). I find that the scope of the waiver of Southbound's advice-of-counsel defense extends to communications that relate to the subject matter of Mr. Pelton's advice, and not just to the advice itself. Specifically, I find that the subject matter of Mr. Pelton's advice is the Shorebilly mark in general, including its use by Southbound, Teal Bay and third parties. Any communications between Mr. Pelton and Southbound related to this subject matter are within the scope of the advice-of-counsel waiver. I will discuss my analysis with respect to each of the exhibits in turn.

1.   Exhibit 1

Exhibit 1[3] of Southbound's *ex parte* submission for the Court's *in camera* review is an email from Mr. Pelton dated October 16, 2012 transmitting a fee agreement to Mr. Robinson. Southbound states that the fee agreement itself has been produced to Teal Bay, but the communication in the body of the email concerning the fee agreement has been redacted (along with Mr. Robinson's credit card payment information). I find that this communication is not

---

[2] Southbound asserts that the attorney-client privilege protects Exhibits 1-7 from disclosure, and that both the attorney-client privilege and the work-product doctrine protect Exhibits 8-10 from disclosure.

[3] *See* ECF No. 72 at 8 n.7.

protected by the attorney-client privilege in the first place. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (noting that "the attorney-client privilege does not extend to billing records and expense reports" where the records reveal only "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed"). Even if it was protected by the attorney-client privilege, it would nonetheless fall within the scope of the advice-of-counsel waiver, which has been construed to be "somewhat broad," because it relates to the topic on which Mr. Pelton gave advice. *See Micro Separations, Inc.*, 159 F.R.D. at 363. I recommend that Southbound be directed to produce Exhibit 1 to Teal Bay without redactions.

### 2. Exhibit 2

Exhibit 2[4] is an email from Mr. Pelton to Mr. Robinson dated October 16, 2012. The email concerns the preparation of a draft letter, but does not specify the substance of the letter or its intended recipient. Taking into consideration that the advice-of-counsel waiver works in this case to protect Teal Bay from Southbound's selective disclosure of information related to the subject matter of Mr. Pelton's advice, the Court is satisfied that this communication need not be produced. Because it would not be unfair to protect this communication from disclosure to Teal Bay, I recommend that the Court grant Southbound's motion for a protective order as to Exhibit 2.

### 3. Exhibit 3

Exhibit 3[5] is an October 22, 2012 email from Mr. Pelton to Mr. Robinson concerning a draft letter that is attached. The draft letter is addressed to Teal Bay's counsel and concerns Southbound's use of the Shorebilly mark. Southbound has presented no authority concerning

---

[4] *See* ECF No. 72 at 7 n.4.
[5] *See* ECF No. 72 at 7 n.4.

whether drafts of letters, which were actually disclosed to Southbound (and upon which Southbound may assert that it relied), remain protected while the final versions of the letters are subject to the waiver. It appears most logical to hold that any document disclosed to Southbound by its attorney related to the Shorebilly mark – regardless of whether it was in draft format or in final format – is subject to the waiver. For example, if a draft of one of Mr. Pelton's letters contained legal analysis that was omitted from the final version of the letter, Southbound may still have relied on the legal analysis of the draft letter in deciding upon its course of action with respect to the mark. Of course, the inverse is also true – Southbound may have relied only on advice and analysis presented in final drafts. Nonetheless, my opinion is that the better approach is to permit Teal Bay to examine the drafts that were actually disclosed to Southbound and that fall within the scope of the subject matter waiver. This will prevent Teal Bay from being surprised at the substance of Southbound's advice-of-counsel defense. In addition, because Southbound is already disclosing the final drafts of the letters at issue, the substance of the communications between Southbound and its attorney will already have been exposed. Because Exhibit 3 relates specifically to Soutbound's use of the mark, the policy of disclosure under the advice-of-counsel doctrine outweighs any policy interest of the communication remaining protected by the attorney-client privilege. As it pertains to Exhibit 3, I recommend that Southbound be directed to produce both the draft letter and the email correspondence by which it was transmitted to Teal Bay.

    **4.**    **Exhibit 4**

Exhibit 4[6] was previously produced to Teal Bay with redactions. Southbound redacted part of an email message from Mr. Pelton to Mr. Robinson related to an invoice, the content of

---

[6] *See* ECF No. 72 at 8 n.8.

the invoice itself and information related to Mr. Robinson's payment of the invoice. I have reviewed the redacted language in this document and find that it is not protected by the attorney-client privilege. It discloses only very generally the nature of the work that Mr. Pelton performed and does not betray Southbound's "litigation strategy[] or the specific nature of the services provided." *See Chaudhry*,174 F.3d at 402. I recommend that Southbound be directed to produce an unredacted copy of Exhibit 4 to Teal Bay.

### 5. Exhibit 5

Southbound states that Exhibit 5[7] is a "May 22, 2013 email regarding Plaintiff's other trademark application, which is not at issue in this case." (ECF No. 57-2 at 14). This email is within the scope of the waiver because it relates to the subject matter of Mr. Pelton's advice; namely, Teal Bay's application to use the Shorebilly mark for items other than clothing. While Southbound correctly states that the communication contains no actual advice, I find that the scope of the subject matter waiver is broader than communications that contain advice, and encompasses all communications between attorney and client on the subject for which the advice-of-counsel defense has been asserted. I recommend that Southbound be directed to produce Exhibit 5 to Teal Bay.

### 6. Exhibit 6

Exhibit 6[8] is an email chain previously produced to Teal Bay with redactions. Part of this email chain includes Exhibit 5, which I recommend above that Southbound be ordered to produce. The remainder of the email chain relates to Southbound's use of the Shorebilly mark and is within the scope of the subject matter waiver. While Southbound contends that the email chain includes communications that concern cease and desist letters entirely unrelated to the

---

[7] *See* ECF No. 72 at 7 n.5.
[8] *See* ECF No. 72 at 8 n.9.

Shorebilly mark, it is clear to me that Mr. Robinson believed that the letters were at least indirectly related to Southbound's use of the Shorebilly mark. I recommend that Southbound be directed to produce Exhibit 6 to Teal Bay.

### 7. Exhibit 7

Exhibit 7[9] (SB-000913 to SB-000926) is an email chain previously produced in redacted form. The emails are between Mr. Robinson and Mr. Pelton and, in general, discuss business and settlement strategies related to this case. Southbound claims that because the email messages do not contain actual advice from Mr. Pelton to Mr. Robinson they need not be produced. As I explained above, this is too narrow a reading of the advice-of-counsel subject matter waiver. The redacted email communications relate to the subject matter at issue in Southbound's advice-of-counsel defense. I recommend that Exhibit 7 be produced to Teal Bay without redactions.

### 8. Exhibit 8

Exhibit 8[10] appears to be a case information sheet containing Mr. Pelton's notes for his representation of Southbound. An entry on the first page (SB-001010) dated October 17, 2013 is redacted. This entry contains a communication from Southbound's litigation counsel to Mr. Robinson. I find that this communication is not within the scope of the subject matter waiver because it is not a communication between Mr. Pelton and Mr. Robinson. Until Southbound asserts that it will rely on the advice-of-counsel defense with respect to advice it received from its litigation counsel, this communication remains protected by the attorney-client privilege and the work-product doctrine. The remainder of the redactions in this exhibit contain communications identical to those in other exhibits, which I recommend that Southbound be ordered to produce. Accordingly, I recommend that Southbound's motion for protective order be

---

[9] *See* ECF No. 72 at 8 n.10.
[10] *See* ECF No. 72 at 9 n.11.

granted as to the first page of Exhibit 8 (SB-001010), but that Southbound be directed to produce the second page of this exhibit (SB-001011) to Teal Bay without redactions.

### 9. Exhibits 9 and 10

Exhibits 9 and 10[11] are communications related to an invoice for Mr. Pelton's legal work on behalf of Southbound. The invoices contain very general descriptions concerning the type of work that Mr. Pelton performed. A review of the invoices reveals that Mr. Pelton represented Southbound with respect to trademark matters, but nothing further is disclosed. As explained above, I find that these documents are not protected by the attorney-client privilege because they do not disclose litigation strategy or reveal the substance of client communications. *See, e.g. Chesapeake & Ohio Ry. Co. v. Kirwan*, 120 F.R.D. 660, 665 (S.D.W. Va. 1988) ("The edited portions of counsel's invoices and supporting documents describe, in very general terms, the work performed. Such information is not protected by the privilege."). In addition, I find that these exhibits are not protected from disclosure by the work-product doctrine because they contain only a bare recitation of the services provided. Their disclosure would not unnecessarily invade Mr. Pelton's preparations or disclose his mental impressions. *See generally Renner v. Chase Manhattan Bank*, No. 98 CIV. 926, 2001 WL 1356192, at *8 (S.D.N.Y. Nov. 2, 2001) (explaining that "billing records that attorneys submit to clients are generally discoverable"). I recommend that Southbound be ordered to produce Exhibits 9 and 10 to Teal Bay.

### C. Need for Further *In Camera* Review

As outlined above, I find that the scope of the subject matter waiver of Southbound's advice-of-counsel defense is broad, and includes all communications between Southbound and Mr. Pelton that relate to the Shorebilly mark. Southbound argues that the scope of the waiver is

---

[11] *See* ECF No. 72 at 7-8 n.6.

narrow, and includes only actual advice that Mr. Pelton gave to Southbound about Southbound's own adoption, registration and use of the Shorebilly mark. In either case, a fact-specific inquiry is necessary to determine the validity of Southbound's assertions of privilege and work-product protection, and further *in camera* review may be required if Southbound maintains its position that only a narrow class of communications fall within the scope of the advice-of-counsel waiver.

## III.  RECOMMENDATION

In sum, I recommend that:

1. Southbound's Motion for Protective Order be granted as to Exhibits 2 and Exhibit 8 (SB-001010 only);

2. Teal Bay's Motion to Compel be granted as to Exhibits 1, 3, 4, 5, 6, 7, 8 (SB-001011 only), 9 and 10; and

3. The Court refer this matter back to me for further *in camera* review if it deems that such review is necessary and appropriate.


Date:  April 21, 2014                             /s/
                                          Timothy J. Sullivan
                                          United States Magistrate Judge